| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) | No. 11 C 5421 |
| ) | |
| v. ) | Judge Ruben Castillo |
| ) | |
| LARRY TAYLOR, TODD GAGLIANO, AMERICAN FIDELITY ASSURANCE COMPANY, and JEFFREY MATTSSON, ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Hartford Fire Insurance Company ("Hartford") brings this action for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, against Defendants Larry Taylor, Todd Gagliano, American Fire Assurance Company, and Jeffrey Mattsson, seeking a declaration that Hartford owes no coverage under the insurance policy that it issued to American Fidelity with respect to any liability that Taylor may have for a hit-and-run accident and claim by the injured pedestrian, Gagliano. Presently before the Court is Hartford's motion for summary judgment against Gagliano pursuant to Rule 56 of the Federal Rules of Civil Procedure. (R. 43, Pl.'s Mot.) Also before the Court is Hartford's motion to strike portions of Gagliano's Response to Hartford's Statement of Facts and Gagliano's Statement of Additional Facts. (R. 66, Pl.'s Mot. to Strike.) For the reasons set forth herein, Hartford's motion to strike portions of Gagliano's Response to Hartford's Statement of Facts and Gagliano's Statement of Additional Facts is granted in part and denied in part, and its motion for summary judgment is

denied.

## RELEVANT FACTS[1]

The material facts are largely undisputed and follow this Court's ruling on the motion to strike, which directly follows this section for the benefit of the reader of this opinion. Hartford is a Connecticut insurance company with its principal place of business in Connecticut. (R. 59, Def.'s Rule 56.1 Resp. ¶ 1.) Defendant Todd Gagliano is an individual, and a resident and citizen of Cook County, Illinois. (*Id.* ¶ 3.) Gagliano was injured in a hit-and-run accident near the intersection of Clark Street and Ridge Avenue in Chicago, Illinois on November 21, 2010 at around 3:30 a.m. (*Id.* ¶ 8.) On November 20, 2010, Jeffrey Mattsson, an employee of American Fidelity, drove a company car to the River Park Hotel ("Hotel") located at 6060 N. Lincoln Avenue in Chicago, Illinois, after a week of working in South Bend, Indiana. (*Id.* ¶ 9.) The company car is a four-door sedan; specifically, it is a red Ford Fusion. (*Id.* ¶ 10.)

Mattsson was scheduled for another work related obligation in Milwaukee the week after the accident, but he told his wife that it would be better to stay in Chicago the weekend of November 20, 2010, rather than to drive home to Springfield, Illinois. (R. 64, Pl.'s Rule 56.1 Resp. ¶¶ 1, 2) Mattsson also told American Fidelity that he needed to pass through Chicago the weekend of November 20, 2010, in order to give materials to another employee. (*Id.* ¶ 3.) American Fidelity assented to Mattsson's travel plans and agreed to pay for Mattsson's expenses,

---

[1] The Court takes the undisputed material facts from the parties' Local Rule 56.1 statements. (R. 55, Plaintiff's Local Rule 56.1 Statement of Material Facts ("Pl.'s Facts"); R. 59, Defendant's Response to Plaintiff's Local Rule 56.1 Statement of Material Facts ("Def.'s Rule 56.1 Resp."); R. 59, Defendant's Local Rule 56.1 Statement of Additional Facts ("Def.'s Add'l Facts"); R. 64, Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Additional Facts ("Pl.'s Rule 56.1 Resp.")).

including his hotel stay at the Hotel on the night of November 20, 2010. (*Id.* ¶ 4.) Contrary to what he told his wife and employer, Mattsson actually planned to stop in Chicago to meet several men he had connected with on various social networking sites, such as Adam4Adam.com and bbrts.com, including Larry Taylor and Gregory Toomer. (*Id.* ¶ 5.)

Mattsson arrived at the Hotel at around 2:30 p.m. on November 21, 2010. (R. 59, Def.'s Rule 56.1 Resp. ¶ 11.) Mattsson checked in and stayed in Room 205 on the second floor of the Hotel. (*Id.* ¶ 12.) After Mattsson checked in to the Hotel, he moved the company car closer to his hotel room. (*Id.* ¶ 13.) Gagliano disputes that the surveillance camera can accurately identify either Mattsson or Room 205, or that the still images depicting the same are decipherable. (*Id.*) This was the last time Mattsson ever operated the company car. (*Id.*) Gagliano also disputes that Mattsson never operated the company car again. (*Id.*) The Hotel maintains a surveillance camera in its parking lot. (*Id.* ¶ 14.) On the surveillance video from November 20 and 21, 2010, the time indicator on the video equipment had not yet been adjusted from Daylight Savings Time to Standard Time. (*Id.*) Consequently, the time stamp on the video is one hour ahead of actual time. (*Id.*) Gagliano states that the surveillance video consists of black-and-white footage that is dark and grainy, and that it is not clear or detailed enough to allow for personal identification of individuals recorded by the surveillance cameras. (*Id.*)

During the evening of November 21, 2010, at around 3:30 p.m., one of Mattsson's acquaintances, identified as "Mike," joined Mattsson at the Hotel. (*Id.* ¶ 15.) Gaglino states that it is not possible to identify the individual who arrived at the Hotel at approximately 3:30 p.m. or what room he or she visited from the still images or surveillance video of the Hotel. (*Id.*) During the evening, two other of Mattsson's acquaintances, Taylor and Toomer, joined Mattsson

3

at the Hotel. (*Id.* ¶ 16.) Taylor arrived at the Hotel at around 6:30 p.m. (*Id.* ¶ 17.) There is nothing distinctive about Taylor's posture or gait other than the fact that he stands "pretty straight" and walks "quickly." (R. 64, Pl.'s Rule 56.1 Resp. ¶ 7.) Gagliano disputes that the approximate time of Taylor's arrival can be determined and disputes Hartford's position that Taylor arrived at the Hotel at around 6:30 p.m. (R. 59. Def.'s Rule 56.1 ¶ 17.) Specifically, because there is nothing distinctive about Taylor's posture or gait it is not possible to identify Taylor as the individual who arrived at the Hotel at approximately 6:30 p.m. or what room he or she visited from the still images or surveillance video of the Hotel. (*Id.*) Mattsson and Taylor had met once before, at some time prior to the weekend of the accident. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 6.) On that occasion, Taylor and Mattsson drove around looking for drugs, smoked marijuana and crack cocaine, and had sex. (*Id.*) At around 7:30 p.m., Mattsson and Mike left the Hotel in Mike's car to go to a local Jewel food store. (R. 59, Def.'s Rule 56.1 Resp. ¶ 18.) Mattsson and Mike left the Hotel to purchase "party materials"—i.e., mathamphetamines. (R. 64. Pl.'s Rule 56.1 Resp. ¶ 8.) However, Mattsson was unable to obtain any drugs, and Mike stole Mattsson's drug money and left him stranded. (*Id.*) When Mattsson and Mike left the room to purchase drugs, Mattsson trusted Taylor enough to leave him in the hotel room that was paid for by his employer, with the room key, while Taylor waited for Toomer to arrive so he could let him in. (*Id.* ¶ 9.) Toomer arrived at the Hotel shortly after 9:00 p.m. on November 20, 2010. (R. 59, Def.'s Rule 56.1 Resp. ¶ 19.) Gagliano disputes that it is possible to identify Toomer as the individual who arrived at the Hotel at approximately 9:00 p.m or to determine what room he or she visited from the still images or surveillance video of the Hotel. (*Id.*) Taylor let Toomer into the room. (*Id.*) Mattson returned to the Hotel in a taxi just before 10:00 p.m.

(*Id.* ¶ 20.) When he returned to the hotel room, Mattsson provided his guests with methamphetamines that he retrieved from his company car. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 11.)

On the evening of November 20, 2010, and into the early morning of November 21, 2010, Mattsson, Taylor, and Toomer used crystal meth and had sex. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 14.) After midnight, Mattsson fell asleep. (R. 59, Def.'s Rule 56.1 Resp. ¶ 21.) Mattsson was asleep the balance of the night. (*Id.*) Toomer and Taylor were still in the hotel room. (*Id.*) Mattsson did not leave the hotel room until around 12:00 p.m. on November 21, 2010. (*Id.*) While in the hotel room, Mattsson repeatedly assured Toomer, who is visually impaired, that Toomer would be given a ride back to the train station that night. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 12.) Taylor was present in the room and within earshot of Mattsson during this conversation. (*Id.*) Mattsson placed the keys to the company car conspicuously out in the open in the hotel room for Taylor and Toomer to see. (*Id.* ¶ 13.)

At around 1:30 a.m. on November 21, 2010, after Mattsson was asleep, Taylor took Mattsson's keys to the company car to drive Toomer to the Bryn Mawr train station. (R. 59, Def.'s Rule 56.1 Resp. ¶ 22.) Gagliano argues that it is not possible to identify Toomer or Taylor as the individuals who went to the company car at around 1:30 a.m. from the still images or the surveillance video of the Hotel, as there is nothing distinctive about Taylor's posture or gait. (*Id.*) At the time, Toomer actually believed that Taylor owned the Ford Fusion that he used to drive Toomer to the Bryn Mawr train station. (*Id.*) Taylor felt that, based on his relationship and foundation of trust with Mattsson, he could use Mattsson's car to drive Toomer to the train station. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 17.) Taylor had no intention of stealing the company car and only intended to use the company car to take Toomer to the train station and come right

5

back. (*Id.*) On the way to the train station, Taylor's driving was erratic and he hit the curb at least twice. (R. 59, Def.'s Rule 56.1 Resp. ¶ 24.) Taylor returned the company car to the Hotel just before 2:00 a.m. on November 21, 2010, and returned to the hotel room. (*Id.* ¶ 25.) Gagliano asserts that there is nothing distinctive about Taylor's gait or posture, and that it is not possible to identify Taylor as the individual returning to the hotel room just before 2:00 a.m. from the still images or the video surveillance of the Hotel. (*Id.*) Mattsson did not hear or see Taylor return to the hotel room. (*Id.* ¶ 26.)

Hartford contends that at 2:40 a.m., Taylor left the hotel room and drove the company car out of the parking lot. (*Id.* ¶ 27.) Gagliano disputes this fact, citing Taylor's deposition testimony in which Taylor testified that after driving Toomer to the train he did not drive again and that when he returned to the hotel room from the train station he was very tired and immediately fell asleep. (R. 59, Def.'s Rule 56.1 Resp., Ex. C, Taylor Dep. at 52:3-7, 53:24-54:3.) In addition, Gagliano claims that Mattsson's affidavit, upon which Hartford relies, is not supported by personal knowledge as Mattsson claimed to be asleep during this time period. (R. 44, Pl.'s Facts, Ex. A, Mattson Aff. ¶¶ 16, 21, 22.) Furthermore, Gagliano disputes that it is possible to identify Taylor as the individual who left the Hotel at 2:40 a.m. from the still images or the video surveillance of the Hotel, as there is nothing distinctive about Taylor's posture or gait. (R. 56, Def.'s Rule 56.1 Resp. ¶ 27.) When Taylor returned from the train station, he was coming down from the effects of crystal meth and was very tired and went right to sleep. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 18.) Hartford disputed this statement, citing Mattsson's deposition testimony and his affidavit, as well as the video surveillance images from the Hotel and the red-light camera at the intersection of the accident. (R. 59, Def.'s Rule 56.1 Resp., Ex. A, Mattsson

6

Dep. at 60:12-17, 62:7-13, 129:0-130:2; R. 44, Pl.'s Facts, Ex. A, Mattsson Aff. ¶¶ 21, 22, 24, 25; Ex. C-1 and C-3, River Park Surveillance Video at 3:40:47, 4:31:10, Ex. C-2 and C-3, Red-Light Video at 3:27:00.) Mattsson did not see or hear Taylor leave the hotel room. (R. 56, Def.'s Rule 56.1 Resp. ¶ 28.)

Hartford alleges that at around 3:27 a.m. on November 21, 2010, Taylor, while operating the company car, hit a pedestrian, Gagliano, near the intersection of Ridge Avenue and Clark Street in Chicago, Illinois. (*Id.* ¶ 29.) Gagliano disputes this statement. (*Id.*) He cites Taylor's testimony attesting to the fact that Taylor was never involved in an automobile accident with Gagliano or any other pedestrian at Ridge and Clark. (R. 59, Def.'s Rule 56.1 Resp., Ex. C, Taylor Dep. at 52:10-21.) Furthermore, Gagliano asserts that Mattsson's affidavit, upon which Hartford relies, is not based on personal information because Mattsson asserts that he was asleep during this entire time period. (R. 44, Pl.'s Facts, Ex. A, Mattsson Aff. ¶¶ 16, 21-23.) Mattsson's testimony on this issue, upon which Hartford relies, is based solely on his review of the surveillance video and the red-light video from the intersection of Ridge and Clark. (R. 44, Pl.'s Facts, Ex. A, Mattsson Aff. ¶¶ 21-23, Ex. A-10, Still Image of Accident, Ex. C-2 and C-3, Red-Light Video at 3:27:00.) Gagliano argues that there is nothing distinctive about Taylor's posture or gait, and that it is not possible to identify Taylor as the individual leaving the hotel room driving the company car at 2:40 a.m. from the still images or the video surveillance of the Hotel. (R. 59, Def.'s Rule 56.1 Resp. ¶ 29.) Gagliano also argues that it is also impossible to identify the driver of automobile depicted in the red-light video at the time of the accident. (R. 59, Def.'s Rule 56.1 Resp., Ex. E, Red-Light Video at 3:27:43.) Gagliano was injured in this accident and has incurred more than $500,000 in medical expenses as a result. (R. 59, Def.'s

7

Hartford alleges that Taylor subsequently fled the scene and returned the damaged company car to the parking lot of the Hotel at 3:31 a.m. (*Id.* ¶ 31.) According to Hartford, Taylor observed the damage on the company car before returning to the hotel room. (*Id.*) Gagliano disputes this statement and cites Taylor's deposition testimony in which he states that after driving Toomer to the train he did not drive the company car again and that he was never involved in an automobile accident with Gagliano or any other pedestrian at Ridge and Clark. (R. 56, Def.'s Rule 56.1 Resp., Ex. C, Taylor Dep. at 52:3-7, 52:20-21.) Furthermore, Gagliano asserts that Mattsson's affidavit, upon which Hartford relies, is not based on personal knowledge because Mattsson asserts that he was asleep during this entire time period and does not claim to have personally observed Taylor fleeing the scene of an accident or returning to the hotel room. (R. 44, Pl.'s Facts, Ex. A, Mattsson Aff. ¶¶ 16, 21-23.) Mattsson's testimony on this issue, upon which Hartford relies, is based solely on his review of the surveillance video and the red-light video from the intersection of Ridge and Clark. (R. 44, Pl.'s Facts, Ex. A, Mattsson Aff. ¶¶ 21-23, Ex. A-10, Still Image of Accident, Ex. C-2 and C-3, Red-Light Video at 3:27:00.) Gagliano argues that there is nothing distinctive about Taylor's posture or gait, and it is not possible to identify Taylor as the individual returning to the hotel room in the company car at 3:31 a.m. from the still images or the video surveillance of the Hotel. (R. 59, Def.'s Rule 56.1 Resp. ¶ 31.) Gagliano also argues that it is impossible to identify the driver of automobile depicted in the red-light video at the time of the accident. (R. 59, Def.'s Rule 56.1 Resp, Ex. E, Red-Light Video at 3:27:43.) Mattsson did not see Taylor reenter the hotel room shortly after 3:30 a.m., and he did not wake up until just before 9:00 a.m. on November 21, 2010. (R. 59, Def.'s Rule 56.1 Resp. ¶

32.) After Mattsson woke up, Taylor informed him that Toomey went home via public transportation. (*Id.* ¶ 33.) Taylor quickly left the Hotel at around 9:30 a.m. (*Id.* ¶ 34.) Gagliano disputes that it is possible to identify Taylor as the individual who left the Hotel at approximately 9:30 a.m. from the still images or surveillance video of the Hotel. (*Id.*)

Mattsson checked out of the Hotel at noon on November 21, 2010. (*Id.* ¶ 35.) After Mattsson checked out, he noticed that the front passenger side of the company car was damaged and notified a clerk at the Hotel that the car was damaged. (*Id.* ¶ 36.) Thereafter, Mattsson called the Chicago Police Department to report what he thought was vandalism to the company car. (*Id.* ¶ 37.) When the Chicago Police arrived, the officer inspected the company car and Mattsson learned that the company car had been involved in a hit-and-run accident early in the morning of November 21, 2010. (*Id.* ¶ 38.) On November 21, 2010, an employee from the Hotel gave the Chicago Police Department the surveillance video from November 20 and 21, 2010. (*Id.* ¶ 39.) On November 21, 2010, the Chicago Police recovered narcotics from the trunk of Mattsson's company car. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 22.) On November 22, 2010, Mattsson told the Chicago Police that he uses "meth" and that he decided to stop in Chicago that weekend to meet with some men. (*Id.* ¶ 23.) Mattsson told the Chicago Police that on the night of the accident he retrieved some "meth" from his car, which he smoked before having sex. (*Id.* ¶ 24.)

On November 24, 2010, Mattsson told his supervisor at American Fidelity that the past weekend was the "first time in his professional life" that he and his wife decided it made sense for him to stay out of town, and that he and "an acquaintance," Larry Miller, had "watched football and had some beers" on the night of November 20, 2010 before going to the Hotel. (*Id.* ¶ 25.) Mattsson failed to disclose that he kept methamphetamines in the company car. (*Id.*) On

9

or about December 3, 2010, American Fidelity terminated Mattsson's employment. (*Id.* ¶ 26.) Shortly after receiving notice of his termination, Mattsson told American Fidelity's Human Resources employee, Kim Ashford, that he had made "just one unfortunate decision about how to spend a weekend . . ." (*Id.*)

Hartford alleges that the weekend before the accident, Taylor asked about driving the company car. (R. 59, Def.'s Rule 56.1 Resp. ¶ 41.) It further alleges that Mattsson explained that he was the only one authorized to drive the company car and specifically told Taylor that Taylor was never allowed to drive the company car. (*Id.*) Gagliano disputes this fact, citing to Taylor's testimony in which Taylor states that at no time did Mattsson ever tell Taylor that he could not drive the company car. (R. 59, Def.'s Rule 56.1 Resp., Ex. C, Taylor Dep. at 25:4-12.) Mattsson never told Taylor that he could not drive the company car, and Mattsson and Taylor never discussed the subject of Taylor's use of the company car. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 20.) Hartford disputes this statement, citing to Mattsson's deposition testimony. (R. 59, Def.'s Rule 56.1 Resp., Ex. A, Mattsson Dep. at 73:11-74:8.)

Hartford issued a commercial automobile policy, bearing policy number 46 UENOE6005, effective from May 15, 2010 to May 15, 2011 to American Fidelity (the "Policy"). (R. 59, Def.'s Rule 56.1 Resp. ¶ 42.) Subject to all of the Policy's terms, conditions, and exclusions, the Policy provides coverage for sums that the "insured" is legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which the Policy applies. (*Id.* ¶ 43). The Hartford Policy provided, in part, as follows:

## BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy

10

carefully to determine rights duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declaration shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declaration designate the only "autos" that are covered "autos."

### A. Description of Covered Auto Designation Symbols

| Symbol | Description of Auto Designation Symbols | |
|--------|------------------------------------------|---|
| 1 | Any "Auto" | |

## SECTION II - LIABILITY COVERAGE

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
* * *

### 1. Who Is An Insured

The following are "insureds."

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except

(1) The owner or anyone else from whom you borrow a covered "auto." This exclusions does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

11

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is in the business of selling, servicing, repairing, parking or storing "autos" unless that business is yours

(4) Anyone other than your "employees," partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees," while moving property to or from a covered "auto."

(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

\* \* \*

## SECTION V - DEFINITIONS

A. 'Accident" includes continuous or repeated exposure to the same condition resulting in "bodily injury" or "property damage."

B. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment."

C. "Bodily injury" means bodily injury, sickness or disease sustained by any person including death resulting from any of these.

\* \* \*

F. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

\* \* \*

J. "Loss" means direct and accidental loss and damage.

(*Id.*)

On or about March 8, 2011, American Fidelity received a letter from Gagliano's attorney advising American Fidelity of a claim against it and Mattsson resulting from the November 21, 2010 accident. (*Id.* ¶ 44.) The letter also contained a Notice of an Attorney's Lien. (*Id.*) On August 10, 2011, Hartford filed this declaratory judgment action seeking a declaration that it owes no coverage obligations to Taylor in connection with the Gagliano claim. (*Id.* ¶ 45.) Defendant Taylor has not appeared in this case and is in default. (*Id.* ¶ 46.)

## PROCEDURAL HISTORY

Hartford commenced this declaratory judgment action on August 10, 2011, by filing a complaint in this Court. (R. 1, Compl.) Hartford named as defendants Larry Taylor, Todd Gagliano, American Fire Assurance Company, and Jeffrey Mattsson. (*Id.*) On January 5, 2012, the Court entered a default against Larry Taylor for his failure to timely appear, answer, or otherwise plead to the complaint. (R. 31, Min. Entry). On January 9, 2012, American Fidelity Assurance Company and Jeffrey Mattsson were dismissed from this suit pursuant to a stipulation. (R. 36, Min. Entry.) The only remaining defendant is Todd Gagliano.

On March 5, 2012, Hartford filed a motion for summary judgment against Gagliano pursuant to Rule 56 of the Federal Rules of Civil Procedure. (R. 43, Pl.'s Mot.) On May 21, 2012, Hartford filed a motion to strike portions of Gagliano's Response to Hartford's Statement of Facts and Gagliano's Statement of Additional Facts. (R. 66, Pl.'s Mot. to Strike.)

## MOTION TO STRIKE

13

Gagliano argues in his Responses to paragraphs 14, 15, 17-20, 22, 25, 27, 29, 31, and 34 of Hartford's Statement of Facts that an identification of individuals "is not possible" from the still images or the surveillance videos offered by Hartford. (R. 59, Def.'s Rule 56.1 Resp. ¶¶ 14, 15, 17-20, 22, 25, 27, 29, 31, 34.) Gagliano argues that Mattsson's identification of certain videotape images is not possible based on Mattsson's personal knowledge because Mattsson was allegedly asleep at the time and did not observe the actions portrayed in the video. (*Id.*) Hartford argues that Mattsson personally reviewed the surveillance video and was able to identify individuals with whom he was acquainted on the tape. (R. 66, Pl.'s Mot. to Strike at 2-3.) Consequently, Hartford argues that Mattsson's review and identification of individuals on the surveillance footage is based on his personal knowledge. (*Id.* at 3.) Hartford argues that Gagliano's Responses to the paragraphs in question from Hartford's Statement of Facts constitutes improper legal argument that has no place in a response to a Rule 56.1 statement of facts. Hartford is correct that a Rule 56.1 statement of facts is not the place to make legal arguments. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts. We have held that a district court has broad discretion to require strict compliance with Local Rule 56.1.") (internal citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (a party's statement of material facts submitted pursuant to Local Rule 56.1 is improper where it is "filled with irrelevant information, legal arguments, and conjecture"). Gagliano's Responses to paragraphs 27, 29, and 31 of Hartford's Statement of Facts disputes the facts on other grounds, including basing his responses on specific references to Taylor's affidavit. (R. 69, Def.'s Resp. to Mot. to Strike at 1.) Such references are proper under Local Rule 56.1(b)(3)(B).

14

Hartford's Statement of Facts cites still images and video footage, claiming that they support

certain facts. In his Responses, Gagliano cites the same video and images for the proposition that

they do not support Hartford's Statement. (*Id.* at 2.) Gagliano is explicitly allowed to reference

"parts of the record and other supporting materials" in his response to the moving party's

statement of facts. L.R. 56.1(b)(3)(B). Gagliano's references back to those same exhibits is not

legal argument; they are entirely proper responses to Hartford's Statement of Facts. Furthermore,

Gagliano is correct to point out in his Responses to Hartford's Statement of Facts that many of

Mattsson's statements are not based on his personal knowledge. (*Id.* at 2.) Specifically, Gagliano

objects to Mattsson's purported identification of videotape images recorded at a time when

Mattsson was allegedly asleep and did not observe the actions portrayed in the video. (*Id.*) A

party does not have first-hand knowledge of an event he did not actually personally witness. *See*

*Von der Ruhr v. Immtech Intern., Inc.*, 570 F.3d 858, 864-65 (7th Cir. 2009). In its motion,

Hartford argues that Mattsson "personally reviewed the surveillance video" and that such review

places the video footage within his personal knowledge. (R. 66, Def.'s Mot. to Strike at 2-3.)

However, Mattsson's review of the video footage, and his statements characterizing that footage,

is not permissible because a party's own characterization of evidence is not permitted in a Local

Rule 56.1 statement. *See* (R. 66, Pl.'s Mot. to Strike at 2) (citing *Cady v. Miss Paige, Ltd.*, No. 02

C 4867, 2004 WL 1144044, at *7 (N.D. Ill. April 30, 2004)). The actual evidence is the video

footage itself, not Mattsson's characterization of it. Gagliano's responses to Hartford's Statement

of Facts directs the Court to the actual evidence and states that it does not depict what Hartford or

Mattsson claim that it does. Gagliano's statements explaining why the cited evidence refutes

Hartford's statement of fact are not legal argument, and are entirely proper. Therefore, all of

Gagliano's Responses to paragraphs 14, 15, 17-20, 22, 25, 27, 29, 31 and 34 of Hartford's Statement of Facts that deny the facts asserted on the basis that Mattsson could not identify individuals in the surveillance video are not improper legal argument, and Hartford's motion to strike them is denied.

Hartford also argues that Gagliano's Responses to paragraphs 22, 25, 28, 29, 31, 32, and 34 of Hartford's Statement of Facts should be stricken because Gagliano attempts to deny the facts alleged on the grounds that Hartford relies on Mattsson's purportedly "self-serving" testimony, or that Mattsson's credibility is at issue. (R. 59, Def.'s Rule 56.1 Resp. ¶¶ 22, 25, 28, 29, 31, 32, 34.) Hartford contends that this is not a fact, but another legal argument that Gagliano inappropriately recites in his Response. (R. 66, Pl.'s Mot. to Strike at 3.) A Rule 56.1 statement is not the province of legal arguments. *See Judson Atkinson Candies, Inc.*, 529 F.3d at 382 n.2; *Cady*, 467 F.3d at 1060. Many of these statements are either not disputed (R. 59, Def.'s Rule 56.1 Resp. ¶¶ 22, 25), while Gagliano's responses to others are properly supported by references to affidavits (*Id.* ¶¶ 29, 31, 32). (R. 69, Def.'s Resp. to Mot. to Strike at 3.) Gagliano argues that paragraphs 28 and 34 of Hartford's Statement of Facts are contradicted by the exhibits Hartford uses to support them. (*Id.*) Gagliano argues that Mattsson's credibility is at issue in this case. (*Id.*) Furthermore, Gagliano notes that he has not introduced the issue of Mattsson's credibility into his own Statement of Additional Facts, and therefore included Mattsson's lack of credibility by way of explanation in his Response to Hartford's Statement of Facts. (*Id.*) The Court finds that Mattsson's credibility is at issue in this case. Therefore, Gagliano's Responses to paragraphs 22, 25, 28, 29, 31, 32, and 34 of Hartford's Statement of Facts on that grounds that the facts are supported by Mattsson's allegedly "self-serving" testimony or that Mattsson's credibility is at

16

issue are not improper legal argument and Hartford's motion to strike them is denied.

Hartford argues that Gagliano's entire second paragraph in response to paragraphs 28 and 40 of Hartford's Statement of Facts contains a long list of arguments concerning Taylor's alleged implied permission to use the subject car. (R. 59, Def's Rule 56.1 Resp. ¶¶ 28, 40; R. 66, Pl.'s Mot. to Strike at 3.) However, as Gagliano points out, these paragraphs actually consist of a long list of citations to the deposition transcripts of Taylor, Mattsson, and Toomer. (R. 69, Def.'s Resp. to Mot. to Strike at 3.) Such citations are entirely proper, as is Gagliano's brief explanation as to why the cited testimony refutes Hartford's assertion that Taylor never had permission to drive the subject car. (R. 59, Def's Rule 56.1 Resp., Ex. C, Taylor Dep. at 52:10-15.) Therefore, Gagliano's Responses to paragraphs 28 and 40 of Hartford's Statement of Facts are not improper legal argument, and Hartford's motion to strike them is denied.

Hartford argues that Gagliano also inserts argument that must be stricken into his Statement of Additional Facts. Hartford argues that paragraph 5 of Gagliano's Statement of Additional Facts is an argumentative statement and characterization and therefore must be stricken. (R. 66, Pl.'s Mot. to Strike at 3.) In paragraph 5 of his Statement of Additional Facts, Gagliano avers that Mattsson actually stopped in Chicago to meet men and that this was "contrary to what he told his wife and employer." (R. 59, Def.'s Add'l Facts ¶ 5.) The Court finds that this statement is not improper legal argument or conjecture, and consequently, Hartford's motion to strike it is denied.

Hartford also argues that paragraph 7 of Gagliano's Statement of Additional Facts is argumentative and contrary to the evidence cited in the record. (R. 66, Pl.'s Mot. to Strike at 3.) In paragraph 7, Gagliano asserts that "there is nothing distinctive about Taylor's posture or gait."

17

(R. 59, Def.'s Add'l Facts ¶ 7.) At his deposition, Mattsson described Taylor as African American, about 5'9", in his mid-to-late-30s, and wearing "jeans, tennis shoes, a heavy parka-type coat with a hood with the fur—little fur around the hood, stocking cap." (R. 59, Def.'s Rule 56.1 Resp., Ex. A, Mattsson Dep. at 46:22-47:8.) Hartford argues that Gagliano's "characterization of the evidence is improper argument and must be stricken." (R. 66, Pl.'s Mot. to Strike at 4.) However, there is nothing about Gagliano's statement that is contrary to what Mattsson testified to, and it is not improper argument. (R. 59, Def.'s Rule 56,1 Resp., Ex. A, Mattsson Dep. at 47:18-48:1.) Therefore, Hartford's motion to strike paragraph 7 of Gagliano's Statement of Additional Facts is denied.

Hartford argues that paragraphs 8 and 9 of Gagliano's Statement of Additional Facts claim that Mattsson purchased drugs. (R. 59, Def's Add'l Facts ¶¶ 8, 9; R. 66, Pl.'s Mot. to Strike at 4.) However, Hartford contends that this is not supported by the evidence because Mattsson testified that only Mike was to purchase drugs. (R. 66, Pl.'s Mot. to Strike at 4; R. 59, Def.'s Rule 56.1 Resp., Ex. A, Mattsson Dep. at 42:17-19, 44:5-10, 45:7-12). Hartford argues that therefore, "Gagliano's characterization is improper." (R. 66, Pl.'s Mot. to Strike at 4.) Gagliano cites Mattsson's deposition and Taylor's deposition to support the proposition that Mattsson purchased drugs. (R. 59, Def.'s Add'l Facts, Ex. A, Mattsson Dep. at 42:16-19, 44:5-45:3, 49:20-21, 50:13-17; Ex. C, Taylor Dep. at 36:10-13, 37:18-24, 41:11-15.) "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment[.]" *Payne v. Milwaukee Cnty.*, 146 F.3d 430, 432 (7th Cir. 1998) (internal quotation marks omitted). Paragraphs 8 and 9 of Gagliano's Statement of Additional Facts are supported by citation to the

record, and therefore they are not improper characterizations and legal argument. Accordingly, Hartford's motion to strike them is denied.

Hartford argues that in paragraph 17 of Gagliano's Statement of Additional Facts he alleges that Taylor felt that he could use Mattsson's car to drive Toomer to the train station and had no intention of stealing the car based on improper questions, which assumed facts not in evidence. (R. 59, Def.'s Add'l Facts ¶ 17; R. 66, Pl.'s Mot. to Strike at 4.) Gagliano cites Taylor's deposition to support his statement of fact. (R. 56, Def.'s Add'l Facts, Ex. C, Taylor Dep. at 49:23-50:9, 57:9-58:7.) The cited testimony is of evidentiary quality. Evidence that is of a permissible basis is "either admissible documents or attested testimony, such as that found in depositions or affidavits—demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible *form* . . .[b]ut it must be admissible in *content*." *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) (internal citations omitted). Here the evidence cited by Gagliano is admissible in content, and therefore Hartford's motion to strike paragraph 17 of Gagliano's Statement of Additional Facts is denied.

Hartford moves to strike paragraphs 6, 8, 9, 11, and 14 of Gagliano's Statement of Additional Facts on the grounds that they are immaterial and irrelevant. (R. 66, Pl.'s Mot. to Strike at 5.) In paragraphs 6, 8, 9, 11, and 14, Gagliano repeatedly refers to sexual activity or drugs. (R. 56, Def.'s Add'l Facts ¶¶ 6, 8, 9, 11, 14.) Hartford argues that Mattsson's drug use and alleged sexual activities are irrelevant to the coverage issues in question in this case because they do not tend to make it more or less probable that Taylor was driving the subject car with permission on the night in question. (R. 66, Pl.'s Mot. to Strike at 5) (citing Fed. R. Evid. 401). Furthermore, Hartford argues that the references to sexual activity and drugs are substantially

more prejudicial than probative. (R. 66, Pl.'s Mot. to Strike at 5) (citing Fed. R. Evid. 403).

Paragraphs in a Local Rule 56.1 statement "should be limited to *material* facts, that is, facts

pertinent to the outcome of the issues identified in the summary judgment motion." *Malec v.*

*Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). Gagliano argues that Mattsson's drug use and

sexual activity are highly probative, that their relevance is key to issues in this case, and that any

prejudicial effect they may have is therefore outweighed by their probative value. (R. 69, Def.'s

Resp. to Mot. to Strike at 6.) Gagliano argues that the details of the night in question are essential

to determining what actually happened, including who was driving the subject car and, if it was

Taylor, whether he had permission. (*Id.*) He further argues that "the *full* version of the story

shows that Hartford's version is improbable, and in some respects, directly contradicted by the

evidence." (*Id.*) Gagliano claims that he included aspects of Mattsson's sexual activity in his

Statement of Additional Facts in order to show the contradiction between what Mattsson told his

wife and employer and what actually happened. (*Id.*) Gagliano claims that this evidence

demonstrates Mattsson's lack of credibility. (*Id.*) Further, Gagliano argues that the specific

nature of Mattsson's relationship with Taylor is highly relevant to the issue of permission. (*Id.*)

He argues that the fact that Mattsson and Taylor had multiple intimate encounters over a period of

two weekends makes it more probable that Mattsson trusted Taylor and that Taylor had

Mattsson's implied permission to use the subject car. (*Id.*) Gagliano also argues that Mattsson's

drug use during the night in question is indicative of his credibility and competency. (*Id.*)

Finally, Gagliano argues that identifying what times throughout the night of the accident Mattsson

left the hotel room and accessed his car in order to obtain drugs is probative of whether it was

Mattsson who was driving the subject car at the time of the accident. (*Id.*) As the Court has

20

already determined, Mattsson's credibility is at issue in this case. Paragraphs 6, 8, 9, 11, and 14 of Gagliano's Statement of Additional Facts are probative of several key issues in this case, and therefore Hartford's motion to strike them is denied.

Hartford also moves to strike paragraphs 21 and 22 of Gagliano's Statement of Additional Facts, which concern Mattsson's arrest for possession of methamphetamines and the Chicago Police Department's recovery of drugs from the trunk of his car. (R. 59, Def.'s Add'l Facts ¶¶ 21, 22; R. 66, Pl.'s Mot. to Strike at 5.) Hartford argues that the recovery of drugs inside Mattsson's car and his subsequent arrest are not relevant to the coverage issues involved in this case and do not make it any more or less probable that Taylor was driving the car with permission on the night in question. (R. 66, Pl.'s Mot. to Strike at 5); Fed. R. Evid. 401; *Malec*, 191 F.R.D. at 583. The arrest would be inadmissible even as impeachment evidence under Federal Rule of Evidence 609, because that rule only allows for the admission of prior convictions. Fed. R. Evid. 609. Gagliano argues that the location of the narcotics in Mattsson's trunk as explained in paragraph 22 cannot be reconciled with Mattsson's own version of events, making it likely that Mattsson left the hotel room and accessed his car on at least one more occasion than he has admitted to, at a time when he claims to have been asleep. (R. 69, Def.'s Resp. to Pl.'s Mot. to Strike at 7.) This goes both to Mattsson's credibility and the issue of whether he could have been driving the subject car at the time of the accident. Therefore, pursuant to Federal Rule of Evidence 609, Hartford's motion to strike paragraph 21 of Gagliano's Statement of Additional Facts is granted, but its motion to strike paragraph 22 is denied.

Hartford further moves to strike paragraphs 1 through 5 of Gagliano's Statement of Additional Facts, which concern Mattsson's travel plans, his employment with American Fidelity,

21

and the reason why he came to Chicago over the weekend of November 20, 2010. (R. 59, Def.'s Add'l Facts ¶¶ 1-5; R. 66, Pl.'s Mot. to Strike at 6.) Hartford argues that all of these facts are irrelevant to the coverage issues in this case and should therefore be stricken. (R. 66, Pl.'s Mot. to Strike at 6.) Gagliano argues that the facts are relevant because they "establish the first in a string of untruthful statements made by Mattsson regarding the weekend in question, and thus go to his credibility." (R. 69, Def.'s Resp. to Mot. to Strike at 7.) The Court agrees that facts which concern Mattsson's travel plans, his employment, and the reason why he came to Chicago are related to his credibility, which is at issue in this case. Therefore paragraphs 1 through 5 of Gagliano's Statement of Additional Facts are not stricken to the extent that they concern those areas of testimony, and Hartford's motion to strike them is denied. *See Malec*, 191 F.R.D. at 538.

Hartford moves to strike paragraphs 25 and 26 of Gagliano's Statement of Additional Facts, which concern Mattsson's emails to and from his employer concerning the accident. (R. 59, Def.'s Add'l Facts ¶¶ 25, 26; R. 66, Pl.'s Mot. to Strike at 6.) Hartford argues that Mattsson's communications with American Fidelity have no bearing on the Court's coverage determination as they do not make it more or less probable that Taylor was driving the subject car with permission on the night in question. (R. 66, Pl.'s Mot. to Strike at 6); Fed. R. Evid. 401; *Malec*, 191 F.R.D. at 583. However, these emails go directly to Mattsson's credibility. Furthermore, Hartford argues that these documents are hearsay, which is just as inadmissible at summary judgment as it is at trial, *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997), and that if Gagliano seeks to use these communications as impeachment for Mattsson's failure to detail the incidents to his employer, these emails would be substantially more prejudicial than probative. (R. 66, Pl.'s Mot. to Strike at 6); Fed. R. Evid. 403. However, these emails are not being

22

introduced for the truth of the matter asserted, but rather to demonstrate Mattsson's credibility, which is at issue in this case. *See U.S. v. Bursey*, 85 F.3d 293, 296 (7th Cir. 1996) (the rule against hearsay does not apply where the statement is not offered for the truth of the matter asserted, but rather for some other legitimate purpose). Furthermore, the evidence is probative of Mattsson's character, and it is not outweighed by its potential prejudicial effect. Therefore, Hartford's motion to strike paragraphs 25 and 26 of Gagliano's Statement of Additional Facts is denied.

Hartford also moves to strike paragraph 17 of Gagliano's Statement of Additional Facts, which concerns Taylor's alleged intent regarding the use of the car. (R. 59, Def.'s Add'l Facts ¶ 17; R. 66, Pl.'s Mot. to Strike at 6.) Hartford argues that the fact that Taylor did not intend to steal the car but only used the car for a while is irrelevant and inadmissible. (R. 66, Pl.'s Mot. to Strike at 6-7.) Hartford argues that Taylor's intent is irrelevant because tortious conversion does not require a showing of culpability. (*Id.* at 7.) For this proposition it cites *Landfield Finance Co. v. Feinerman*, 279 N.E.2d 30, 33 (Ill. App. Ct. 1st Dist. 1972), which holds that "[i]n an action for conversion relief may be had without establishing malice, culpability or conscious wrongdoing." However, that case dealt with the conversion of furniture and personal belongings and was not decided under the initial permission rule that applies to automobile coverage disputes. A case more on point is cited by Gagliano, *W. States Mut. Ins. Co. v. Verucchi*, 363 N.E.2d 826, 282 (Ill. 1977), in which the Supreme Court of Illinois found that insurance coverage attached where there was *no intent* to deprive the owner of the use of his automobile. (R. 69, Def.'s Resp. to Mot. to Strike at 8.) With respect to conversion, the court stated that "[w]hile that action may have constituted a technical conversion, it is clearly not the type of conduct embraced within the

23

*Maryland Casualty* and *McManus* exceptions." *Verucchi*, 363 N.E.2d at 282. Therefore, Taylor's intent is potentially material to issues in this case, *Malec*, 191 F.R.D. at 583, and Hartford's motion to strike paragraph 17 of Gagliano's Statement of Additional Facts is denied to the extent that paragraph 17 involves Taylor's intent to use the car.

Hartford moves to strike Gagliano's Responses to paragraphs 13, 15, 17-20, 22, 25, 27, and 34 of its Statement of Facts on the grounds that Gagliano does not "cite specific evidentiary materials justifying the denial." (R. 59, Def.'s Rule 56.1 Resp. ¶¶ 13, 15, 17-20, 22, 25, 27, 34; R. 66, Pl.'s Mot. to Strike at 7) (quoting *Malec*, 191 F.R.D. at 584). To adequately dispute a statement of fact, the opposing party must cite specific support in the record; an unsubstantiated denial or a denial that is mere argument or conjecture is not sufficient to create a genuinely disputed issue of material fact. *See Alberio v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001) ("We require that the party opposing the motion take reasonable steps to provide the district court sufficient evidence to create a genuine issue of material fact."); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (internal citations and quotations marks omitted); *see also Judson Atkinson Candies, Inc.*, 529 F.3d at 382 n.2; *Cady*, 467 F.3d at 1060. Paragraphs 13, 15, 17-20, 22, 25, 27, and 34 all contain Gagliano's argument that Hartford's exhibits A-1, B, C, C-1, C-3, and D do not support its position. Gagliano asserts that each of the disputed paragraphs cites a low-resolution still image from the surveillance video, the affidavits of Iqbal Ahmed (the River Park Hotel employee who authenticated the video surveillance footage), Matthew Scott (Hartford's video editor who

24

enhanced the surveillance video and still frames), and Ashley Conaghan (Hartford's attorney who subpoenaed the video footage and sent it to Matthew Scott for enhancement). (R. 69, Def.'s Resp. to Mot. to Strike at 7.) Hartford seems to argue in its motion that in order for Gagliano to dispute the allegedly inconclusive nature of Hartford's still images, Gagliano must come forward with some additional evidence. (R. 66, Pl.'s Mot. to Strike at 7.) However, as Gagliano points out, the evidence upon which he relies are the still images themselves. (R. 69, Def.'s Resp. to Mot. to Strike at 7-8.) Gagliano avers that his argument is "very clear: the images are of such poor quality that an identification of the figures depicted therein simply cannot be made." (*Id.* at 8.) Hartford now claims that both Mattsson and Toomer identified the individuals on the surveillance tape. (R. 66, Pl.'s Mot. to Strike at 7.) Gagliano argues that Mattsson claims to have been asleep during the relevant portions of the evening, and thus his review of the surveillance tape is not based on personal knowledge. (R. 69, Def.'s Resp. to Mot. to Strike at 9.) Further, Gagliano argues that Hartford did not cite Toomer's deposition in support of these paragraphs in its Statement of Facts, and it is improper to do so now. (*Id.*) He also argues that it is undisputed that Toomer is visually impaired, and that he was only at the Hotel from approximately 9:00 p.m. on November 20, 2010 to 1:30 a.m. on November 21, 2010. Thus, Gagliano argues that any statements made by Toomer regarding events after 1:30 a.m. on November 21, 2010—including the critical identification of who was driving at the time of the accident—are not based on personal knowledge. Gagliano's denial is therefore adequately supported by evidence in the record. This support is sufficient to properly controvert the moving party's statement of facts. *See Alberio*, 246 F.3d at 933; *Drake*, 134 F.3d at 887. Therefore Gagliano's Responses to paragraphs 13, 15, 17-20, 22, 25, 27, and 34 of Hartford's Statement of Facts are not stricken, and Hartford's motion to strike them is denied.

Gagliano's Responses to paragraphs 36, 37, and 38 of Hartford's Statement of Facts dispute those paragraphs on the bases that Mattsson did not notice the damage to the car before checking out of the Hotel, that Mattsson thought that the damage was caused by vandalism, and that Mattsson did not know that the car company was involved in a hit-and-run accident, because the exhibits cited by Hartford do not support its position. (R. 59, Def.'s Rule 56.1 Resp. ¶¶ 36-38.) Hartford argues that Gagliano has offered no proof to the contrary and that therefore his responses should be stricken. (R. 66, Pl.'s Mot. to Strike at 8.) An unsubstantiated denial, unsupported by evidence in the record, is not sufficient to controvert the moving party's statement of facts. *See Alberio*, 246 F.3d at 933; *Drake*, 134 F.3d at 887. Here, Gagliano has not supported his denials with evidence in the record. Therefore, Hartford's motion to strike Gagliano's Responses to paragraphs 36, 37, and 38 of Hartford's Statement of Facts is granted.

In his Response to paragraph 21 of Hartford's Statement of Facts, Gagliano disputes Hartford's claim that Mattsson did not leave the hotel room after about midnight on the night of the accident because the surveillance video depicts an individual leaving the hotel room at 1:00 a.m. to access a vehicle. (R. 59, Def's Rule 56.1 Resp. ¶ 21; R. 66, Pl.'s Mot. to Strike at 8.) Gagliano argues that Mattsson did not identify the individual in question at that time but argues that the individual is Mattsson based on "behavior." (R. 66, Pl.'s Mot. to Strike at 8.) Gagliano further argues that Mattsson accessing the trunk is the only explanation for the fact that the Chicago Police Department recovered drugs. (*Id.*) Gagliano cites no evidence to support the fact that Mattsson is the individual depicted in the surveillance video, except the surveillance video itself. An adequate denial requires support in the record; an unsubstantiated denial or a denial that is not supported by facts in the record is insufficient to controvert the moving party's statement of

fact. *See Alberio*, 246 F.3d at 933; *Drake*, 134 F.3d at 887. Therefore, Hartford's motion to strike Gagliano's response to paragraph 21 of Hartford's Statement of Facts is granted.

Hartford also moves to strike Gagliano's responses to paragraphs 23 and 28 of its Statement of Facts because Gagliano's responses contain only the boilerplate sentence that "Gagliano disputes all other statements contained in the Paragraph." (R. 59, Def's Rule 56.1 Resp. ¶ 23, 28; R. 66, Pl.'s Mot. to Strike at 8.) Such a general denial is insufficient. *See Alberio*, 246 F.3d at 933; *Drake*, 134 F.3d at 887. The responses are stricken as to those portions of the paragraphs to which they relate, and therefore Hartford's motion to strike these responses is granted.

In addition, Hartford moves to strike paragraphs 8[2] and 17 of Gagliano's Statement of Additional Facts wherein Gagliano contends that Mattsson was not able to obtain any drugs, because Hartford argues "that is not supported by evidence in the record." (R. 59, Def's Add'l Facts ¶¶ 8, 17; R. 66, Pl.'s Mot. to Strike at 8.) Mattsson testified that Taylor and Mike were looking to purchase drugs, that Mattsson allowed Mike to borrow some money, and that Mike purchased the drugs while Mattsson waited at a Jewel grocery store. (R. 59, Def.'s Add'l Facts, Ex. A, Mattsson Dep. at 42:17-19, 44:5-10, 45:7-12.) The description in Gagliano's statement accurately reflects the testimony, which is that Mattsson and Mike left the Hotel to purchase drugs with Mattsson's money. Mattsson stated in his deposition that Mike never came back to pick him up. (R. 59, Def.'s Rule 56.1 Resp., Ex. A, Mattsson Dep. at 49:20-21.) In other words, Mike abandoned Mattsson and absconded with his drug money. Paragraph 17 also states that Taylor

---

[2] Hartford's motion refers to paragraph 9, but it is actually paragraph 8 that states that "Mattsson was not able to obtain any drugs." (R. 66, Pl.'s Mot. to Strike at 8.)

felt he could drive the car based on his "friendship;" however Taylor's own testimony establishes that Mattsson and Taylor do not have a "friendship." (R. 66, Pl.'s Mot. to Strike at 9; R. 59, Def.'s Add'l Facts, Ex. C, Taylor Dep. at 26:21-27:6, 49:23-50.) Gagliano fails to cite any other supporting evidence to establish that Mattsson and Taylor have a "friendship." However, Matsson "trusted" Taylor, as is supported by Taylor's testimony to that effect. (R. 59, Def.'s Rule 56.1 Resp., Ex C, Taylor Dep. at 37:18-24.) In the full context, it is clear that the question posed to Taylor about Mattsson's trust was a logical inference that followed from the preceding testimony. Taylor agreed with this inference and confirmed that it seemed as though Mattsson trusted him. (*Id.* at 37:18-24.) He also emphatically confirmed that he thought he had permission to drive the subject car and did not feel that he was stealing it. (*Id.* at 57:9-13.) Therefore, paragraph 8 of Gagliano's Statement of Additional Facts is not stricken, and Hartford's motion to strike it is denied. Hartford's motion to strike paragraph 17 of Gagliano's Statement of Additional Facts is granted. Paragraph 17 is stricken to the extent that it purports to establish that Mattsson and Taylor had a friendship, but the statement is not stricken to the extent that it purports to establish that Taylor believed Mattsson trusted him.

Hartford also moves to strike portions of paragraphs 2-5, 12, 14, 23-26, and 33 of Gagliano's Statement of Additional Facts because they allegedly contain improper hearsay. (R. 59, Def.'s Add'l Facts ¶¶ 2-5, 12, 14, 23-26, 33; R. 66, Pl.'s Mot. to Strike at 9-11.) In ruling on a motion for summary judgment, the Court only considers evidence that would be admissible at trial, except that depositions and affidavits are admissible on summary judgment. *See Winskunas*, 23 F.3d at 1267-68. Hearsay is inadmissible on summary judgment to the same extent that it is inadmissible at trial. *See Eisenstadt*, 113 F.3d at 742. Moreover, the proponent of hearsay bears

the burden of establishing that the statement is admissible. *See Bourjaily v. U.S.*, 483 U.S. 171, 175-76 (1987). Gagliano argues that the statements to which Hartford refers are not hearsay because they are not offered for the truth of the matter asserted. (R. 69, Def.'s Resp. to Mot. to Strike at 11.) It is foundational that "statements that are offered not to prove the truth of the matter asserted, but for some other legitimate purpose, do not qualify as hearsay." *Bursey*, 85 F.3d at 296 (internal citations and quotations marks omitted). The use of prior inconsistent statements to impeach a witness's credibility is a standard exception to the rule against hearsay. *See U.S. v. Burt*, 495 F.3d 733, 737 (7th Cir. 2007).

Hartford argues that paragraphs 2 through 5 of Gagliano's Statement of Additional Facts concern Mattsson's travel arrangements to Chicago. (R. 59, Def.'s Add'l Facts ¶¶ 2-5; R. 66, Pl.'s Mot. to Strike at 10.) Hartford argues that Mattsson's statement to his wife is inadmissible hearsay, and is protected by the spousal privilege under Illinois law, 735 Ill. Comp. Stat. 5/8-801. (R. 66, Pl.'s Mot. to Strike at 10.) Hartford further argues that Mattsson's statements to American Fidelity contained in paragraphs 3 and 4 are also inadmissible hearsay. (*Id.*) Hartford next argues that counsel's "argumentative characterization" in paragraph 5 that Mattsson's Chicago trip was "contrary to what he told his wife and employer" should be stricken because what Mattsson told his wife and employer is inadmissible hearsay. (*Id.*) Furthermore, Hartford argues that Mattsson's statement to Officer Martin is inadmissible hearsay. (*Id.*) Gagliano argues that he introduced these statements to demonstrate that Mattsson was lying to his wife and employer. (R. 69, Def.'s Resp. to Mot. to Strike at 11.) "These statements were the first in a string of false statements and omissions made by Mattsson about the night in question, and demonstrate Mattsson's lack of credibility." (*Id.*) Furthermore, Gagliano argues that to the extent that

Mattsson's testimony was protected by the spousal privilege, any such privilege has been waived as no objection was made during Mattsson's deposition. (*Id.* at 11-12.) As has been stated, the Court finds that Mattsson's credibility is at issue in this suit. Therefore, the Court finds that the statements included in paragraphs 2 through 5 of Gagliano's Statement of Additional Facts are not hearsay because they are not offered for the truth of the matter asserted. *See Bursey*, 85 F.3d at 296. Rather they are being offered to impeach Mattsson's credibility. *See Burt*, 495 F.3d at 737. Accordingly, Hartford's motion to strike the paragraphs is denied.

Hartford next argues that paragraph 12 of Gagliano's Statement of Additional Facts concerns a conversation between Mattsson and Toomer at the Hotel about Toomer's travel arrangements wherein Mattsson assured Toomer that he would get Toomer home that night. (R. 59, Def.'s Add'l Facts ¶ 12; R. 66, Pl.'s Mot. to Strike at 10.) These same facts were offered in Gagliano's Response to paragraphs 23, 28, and 40 of Hartford's Statement of Facts. (R. 66, Pl.'s Mot. to Strike at 10.) Hartford argues that the conversation is inadmissible hearsay and should be stricken. (*Id.*) Gagliano argues that the statement is offered to show that Taylor had Mattsson's implied permission to drive Toomer to the train because Taylor was aware of the promise that Mattsson made to Toomer and used the car for the limited purpose of helping his friend fulfill that promise. (R. 69, Def.'s Resp. to Mot. to Strike at 12.) Gagliano argues that even if the statement is hearsay, it falls into the exception for a then-existing mental, emotional, or physical condition pursuant to Federal Rule of Evidence 803(3) because it is a statement of Mattsson's then-existing plan to make sure that Toomer was given a ride back to the train. Mattsson's plan to take Toomer to the train is thus at issue here. *See U.S. v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992) (holding that in order for 803(3) to be applicable, the declarant's state of mind must be relevant). Because

the statement falls within the exception contained in the Federal Rules of Evidence, and because it is not offered for the truth of the matter asserted but rather to show Taylor's awareness of the promise that Mattsson made to Toomer, *Bursey*, 85 F.3d at 296, and to impeach Mattsson's credibility, *Burt*, 495 F.3d at 737, it is not hearsay, and therefore Hartford's motion to strike paragraph 12 of Gagliano's Statement of Additional Facts is denied.

Hartford argues that paragraphs 14, 23, and 24 of Gagliano's Statement of Additional Facts concern the testimonies of Chicago Police Officers Joanna Martin and Bogulima Galey, which recount statements Mattsson allegedly made to the officers. (R. 59, Def's Add'l Facts ¶¶ 14, 23, 24; R. 66, Pl.'s Mot. to Strike at 10-11.) Hartford contends that these statements are inadmissible hearsay and must be stricken. (R. 66, Pl.'s Mot. to Strike at 11.) Gagliano argues that he introduced these statements to demonstrate Mattsson's lack of credibility. (R. 69, Def.'s Resp. to Mot. to Strike 12.) Mattsson's statements to the police differ from what he told his wife and employer, and from what he testified to in his deposition for this case. Further, to the extent that the statements are inconsistent with the version of events relied upon by Hartford, Gagliano offers the statements for the purposes of impeachment. Because the statements are not offered for the truth of the matter asserted, *Bursey*, 85 F.3d at 296, and because they are offered for impeachment, *Burt*, 495 F.3d at 737, they are not hearsay. Hartford's motion to strike paragraphs 14, 23, and 24 of Gagliano's Statement of Additional Facts is denied.

Hartford also argues that paragraphs 25 and 26 of Gagliano's Statement of Additional Facts, as well as the corresponding Exhibits I and J, which are emails between Mattsson and American Fidelity, should be stricken. (R. 59, Def.'s Add'l Facts ¶¶ 25, 26, Ex. I, Ex. J; R. 66, Pl.'s Mot. to Strike at 11.) Hartford argues that these emails and exhibits constitute inadmissible

hearsay. (R. 66, Pl.'s Mot. to Strike at 11.) Hartford's final hearsay argument relates to paragraph 33 of Gagliano's Response to Hartford's Statement of Facts, which relies on Taylor's statement to Mattsson in the hotel room. (R. 59, Def.'s Rule 56.1 Resp. ¶ 33; R. 66, Pl.'s Mot. to Strike at 11.) Gagliano argues that the statements in paragraphs 25 and 26 are not being offered for the truth of the matter asserted, but rather to demonstrate that Mattsson again lied to his employer, and to demonstrate Mattsson's lack of credibility. (R. 69, Def.'s Resp. to Mot. to Strike 12.) Therefore, because paragraphs 25 and 26 are not being offered for the truth of the matter asserted, *Bursey*, 85 F.3d at 296, but rather to impeach Mattsson's credibility, *Burt*, 495 F.3d at 737, they are not hearsay. Hartford's motion to strike paragraphs 25 and 26 of Gagliano's Statement of Additional Facts is denied. Gagliano's Response to paragraph 33 concerns statements allegedly made by Taylor to Mattsson on the morning of November 21, 2010. (R. 59, Def.'s Rule 56.1 Resp. ¶ 33.) They are offered to prove that Mattsson never told Taylor that Toomer went home via public transportation, and therefore are offered for the truth of the matter asserted. (*Id.*) To the extent that Gagliano's Response to paragraph 33 of Hartford's Statement of Facts contains hearsay, that evidence is inadmissible, *Eisenstadt*, 113 F.3d at 742, and Hartford's motion to strike that portion of Gagliano's Response to paragraph 33 of Hartford's Statement of Facts is granted.

Hartford moves to strike paragraphs 18, 19, and 20 of Gagliano's Statement of Additional Facts in their entireties because Gagliano cites Taylor's testimony as support for his proposed fact that Taylor was not driving Mattsson's car and was not involved in the subject accident. (R. 59, Def.'s Add'l Facts ¶¶ 18-20; R. 66, Pl.'s Mot. to Strike at 11.) Hartford moves to strike these paragraphs on the grounds that Taylor lacks personal knowledge to the key events and that therefore his testimony is inadmissible. (R. 66, Pl.'s Mot. to Strike at 11.) Hartford argues that

Taylor's testimony is inadmissible evidence because, as Taylor admits, he does not remember many of the events in question and does not remember if he was driving the car. (R. 66, Pl.'s Mot. to Strike at 11; R. 59, Def.'s Add'l Facts, Ex. C, Taylor Dep. at 54:12-20, 56:17-22). A witness must have personal knowledge of the matter, including a sufficient recollection of the events, in order to testify. *See Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991) ("Testimony about matters outside [a witness's] personal knowledge is not admissible, and if not admissible at trial neither is it admissible in an affidavit used to support or resist the grant of summary judgment."). Hartford also argues that Taylor's testimony is unworthy of credence because he did drugs before going to the Hotel, at the Hotel, and almost every day before that time period, and because Taylor testified that he was drinking beer. (R. 66, Pl.'s Mot. to Strike at 13; R. 59, Def.'s Add'l Facts, Ex C, Taylor Dep. at 32:22-33:10, 44:3-5, 61:23-62:18). Furthermore, Taylor admitted that he did not remember certain events because he was high. (R. 59, Def.'s Add'l Facts, Ex C, Taylor Dep. at 61:2-16.) Taylor's testimony in this case presents a potentially insufficient recollection of the events in question.

Taylor testified that he thought that he met Mattsson at a hotel in February, presumably in 2011; Gagliano's counsel testified during Taylor's questioning that "it was November of 2010." (*Id.* at 19:11-18, 32:3-8.) Taylor does not remember where the Hotel was located, the name of the Hotel, or even a description of the Hotel; instead, Gagliano's counsel supplied the answers. (*Id.* at 20:10-22, 21:11-16, 29:16-30.) When Taylor was asked if he drove the car at the time of the accident he answered that he did not remember driving the car. (*Id.* at 54:12-20.) Taylor admits that he does not remember if he hit Gagliano. (*Id.* at 56:17-22.)

Drug users and addicts, and witnesses with memory problems, are not automatically

disqualified from giving testimony. *See U.S. ex rel. Lemon v. Pate*, 427 F.3d 1010, 1013 (7th Cir. 1970) ("As to narcotics addicts, a habitual user of drugs is not rendered incompetent unless his mental capacity is impaired to such an extent that he cannot meet the qualifications of a witness. If a witness has the capacity to observe, recollect and communicate he is competent, and his mental deficiency is considered only insofar as it affects the credit to be given his testimony.") (internal citations omitted); *see e.g., Clayton v. Eli Lilly and Co.*, 421 F. Supp. 2d 77, 81 (D.D.C. 2006) ("[T]he reliability of [witness's] memory goes to the weight of the evidence. Memory gaps and doubts caused by the lapse of time go to the weight to be given the testimony, and accordingly constitute a matter for the jury.") (internal citations and quotation marks omitted). Rather, the credibility of a witness's testimony is normally a matter of credibility for a jury to weigh, not a matter of competency or admissibility for the Court to decide. *See U.S. v. Bradshaw*, 719 F.2d 907, 921 (7th Cir. 1983); *see also U.S. v. Banks*, 520 F.2d 627, 630-31 (7th Cir. 1975) (holding that it was an error for the district judge to exclude testimony of the witness's drug use at trial, despite the "possible indication of a drug-related impairment in [the witness's] ability accurately to recollect and relate factual occurrences while testifying"); *Johnson v. Cook Inc.*, 327 F. App'x 661, 664 (7th Cir. 2009) (lack of memory is not to be confused with lack of involvement; where the witness was involved in termination of the plaintiff but later did not remember what he knew he nevertheless had personal knowledge sufficient to testify); *accord U.S. v. Van Meerbeke*, 548 F.2d 415, 418 (2d Cir. 1976), *cert. denied*, 430 U.S. 974 (a witness who digested opium on the witness stand remained a competent witness able to testify based on personal knowledge); *U.S. v. Jackson*, 576 F.2d 46, 49 (5th Cir. 1978) ("The fact that a witness is a narcotics user goes not to his competency, but to his credibility."); *U.S. v. Hickey*, 917 F.2d 901, 903-04 (6th Cir. 1990)

34

(district court did not abuse its discretion in admitting the testimony of a "self-confessed cocaine addict," where the witness's testimony suffered from numerous deficiencies, including "claimed lack of memory, . . . uncertainty as to details, and several inconsistencies" because "[d]espite the fact that [the witness's] testimony may have been, in large part, unbelievable to some and in spite of the possibility that his perception was sometimes impaired, a reasonable or rational juror could believe that [the witness] . . . perceived the course of events to which [he] testified"); *U.S. v. Franklin*, 415 F.3d 537, 549 (6th Cir. 2005) ("[Defendant's] first contention—that the district court should have excluded [the witness's] testimony on the ground that [the witness] claimed he was intoxicated at trial and before the grand jury—is clearly without merit. Rule 602 of the Federal Rules of Evidence requires that witnesses have personal knowledge of the matter about which they testify. The threshold for admitting testimony under Rule 602 is low.") (internal citations and quotation marks omitted); *see, e.g.*, *Barto v. Armstrong World Indus., Inc.*, 923 F. Supp. 1442, 1445-47 (D.N.M. 1996) (admitting testimony of a witness as having personal knowledge despite the fact that the witness may have been impaired by heavy-duty medication and that the witness's memory might have been altered, noting that "[the witness's] medicated state and his sometimes uncertain testimony may raise some questions regarding his credibility. However, such questions go to the weight and not the admissibility of his testimony"); *see also* Michael H. Graham, *Handbook of Federal Evidence* § 601.1 (7th ed. 2011) ("Competency of a witness to testify thus requires a minimum ability to observe, record, recollect and recount as well as an understanding of the duty to tell the truth. Where the capacity of a witness has been brought into question, the ultimate question is whether a reasonable juror must believe that the witness is so bereft of his powers of observation, recordation, recollection and narration as to be so

35

untrustworthy as a witness as to make his testimony lack relevancy. Such a test of competency has been characterized as requiring minimum credibility. The tendency is increasingly to resolve doubts as to minimum credibility of the witness in favor of permitting the jury to hear the testimony and judge the credibility of the witness for itself."); *Id.* § 601.3 ("Habitual use of intoxicants or drug addiction does not by itself make a witness incompetent to testify. Even the fact that a witness testifies while under the influence is not disqualifying; competency is determine by an assessment of minimum credibility."); Fed. R. Evid. 602 (a witness must have personal knowledge of the matter to which they are testifying); *but see Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1211-12 (7th Cir. 1993) (a witness's testimony cannot defeat summary judgment where the witness previously admitted lacking a recollection of the events because a witness must have personal knowledge in order to testify). Where a witness lacks a sufficient memory, it is not necessary to exclude their testimony; the decision to exclude lies in the sound discretion of the Court, which retains the ultimate authority to exclude testimony if *no* reasonable juror could believe it. *See U.S. v. Gutman*, 725 F.2d 417, 435 (7th Cir. 1984).

In this case, the issue of Taylor's credibility must go to a jury. It would be a mistake to confuse his purported lack of memory with a lack of involvement in the incident. *See Johnson*, 327 F. App'x at 664. Taylor participated in the incident and the surrounding circumstances giving rise to the accident, and his recollections must be judged by a jury—the adequacy of his testimony is not a question of competency for the Court to decide. *See U.S. ex rel. Lemon*, 427 F.3d at 1013. Taylor did participate in heavy drug use, but it would be an error to exclude his testimony because of the "possible indication of a drug-related impairment in [his] ability accurately to recollect and relate factual occurrences while testifying." *Banks*, 520 F.2d at 630-31. Despite the

inconsistencies and potential gaps in Taylor's memory, and notwithstanding the fact that Taylor's testimony may, in large part, be unbelievable to some and in spite of the probability that Taylor's perception was sometimes impaired, a reasonable juror *could* believe that Taylor perceived the course of events to which he testified in his deposition, and therefore the matter must be submitted to the trier of fact. *Hickey*, 917 F.2d at 903-04. Accordingly, Hartford's motion to strike paragraphs 18, 19, and 20 of Gagliano's Statement of Additional Facts is denied.

In addition, Hartford argues that a number of Gagliano's responses to its Statement of Facts, as well as his Statement of Additional Facts, consist of nothing more than speculation. (R. 66, Pl.'s Mot. to Strike at 13-14.) The Court will not allow mere speculation in a Local Rule 56.1 statement of facts; pure speculation has no place in a Local Rule 56.1 statement of facts. *See, e.g., Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1072 (N.D. Ill. 2007). In Gagliano's Response to paragraph 32 and in his partial Response to paragraph 21 of Hartford's Statement of Facts, he contends that Mattsson did wake up before 9:30 a.m because of certain activity in the hotel room at 3:37 a.m and 4:02 a.m. on the surveillance footage. (R. 59, Def.'s Rule 56.1 Resp. ¶¶ 21, 32; R. 66, Pl.'s Mot. to Strike at 14.) Aside from offering no specific evidence to support his denial, Gagliano merely speculates that Mattsson was the individual seen at those times on the tape. There is no support for Gagliano's arguments in this regard, and they are inappropriately speculative characterizations. Therefore, Hartford's motion to strike Gagliano's Response to paragraph 32 and his partial Response to paragraph 21 of Hartford's Statement of Facts is granted.

Hartford also asserts that paragraphs 4, 9, 15, 18, 19, and 20 of Gagliano's Statement of Additional Facts must be stricken as pure speculation. (R. 59, Def.'s Add'l Facts ¶¶ 4, 9, 15, 18-20; R. 66, Pl.'s Mot. to Strike at 14.) Paragraph 4 concerns American Fidelity's assent to

Mattsson's travel plans to Chicago, which Hartford claims is speculative because Mattsson testified that he does not recall informing American Fidelity of his travel plans. (R. 66, Pl.'s Mot. to Strike at 14.) Hartford does not cite Mattsson's testimony, but his testimony shows Hartford to be wrong; he did recall informing his supervisor of his travel plans. (R. 59, Def.'s Rule 56.1 Resp., Ex. A, Mattsson Dep. at 88:8-18.) Hartford argues that in paragraph 9, Gagliano speculates that Mattsson "trusted" Taylor based on Taylor's speculative response to counsel's questions. (R. 66, Pl.'s Mot. to Strike at 14.) However, as Gagliano points out, the statement that Mattsson trusted Taylor is confirmed by Taylor's deposition testimony, in which Taylor directly stated that Mattsson trusted him, an inference which logically followed from Taylor's testimony that Mattsson left Taylor in charge of the hotel room while he and Mike went out. (R. 69, Def.'s Resp. to Mot. to Strike at 15; R. 59, Def.'s Rule 56.1 Resp., Ex. C, Taylor Dep. at 37:18-24.) Paragraph 15 concerns Gagliano's claim that, based on surveillance tapes, Mattsson exited the hotel room at 1:00 a.m.; however, Gagliano provides no evidence that the individual is Mattsson, nor does Gagliano provide any testimony demonstrating that someone else has identified the individual as Mattsson. Paragraphs 4 and 9 of Gagliano's Statement of Additional Facts are adequately supported and Hartford's motion to strike them is denied. Paragraph 15 of Gagliano's Statement of Additional Facts is pure speculation and therefore Hartford's motion to strike it is granted. Hartford argues that paragraphs 18, 19, and 20 of Gagliano's Statement of Additional Facts should likewise be stricken because they are based on Taylor's testimony and Taylor allegedly lacks personal knowledge to testify. (R. 66, Pl.'s Mot. to Strike at 15.) However, as set forth above, the Court finds that the issue of Taylor's testimony must be submitted to a jury. Therefore, Hartford's motion to strike paragraphs 18, 19, and 20 of Gagliano's Statement of Additional Facts

38

is denied.

For the foregoing reasons, Hartford's motion to strike portions of Gagliano's Response to Hartford's Statement of Facts and Gagliano's Statement of Additional Facts (R. 66) is DENIED in part and GRANTED in part.

## LEGAL STANDARD

In deciding a motion for summary judgment the Court does not evaluate the weight of the evidence, judge the credibility of the witnesses, or determine the ultimate truth of the matter; instead, it is the function of this Court in ruling on a motion for summary judgment to ascertain whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A disputed fact is 'material' if it might affect the outcome of the suit under governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Omnicare Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *See Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008); *see also Celotex Corp.*, 477 U.S. at 322. The moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Branzinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). Once the moving party has met this

burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial."

Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324. The nonmoving party may not rely

on mere conclusions or allegations to create a genuinely disputed issue of material fact. *See*

*Bladerston v. Fairbanks Morse Engine Div. of Coltec Ind.*, 328 F.3d 309, 320 (7th Cir. 2003).

Nor can mere speculation be used "to manufacture a genuine issue of fact." *Springer v.*

*Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919,

927 (7th Cir. 2001)). In order to defeat a motion for summary judgment the nonmoving party

"must make a showing sufficient to establish any essential element of [his] cause of action for

which [he] will bear the burden of persuasion at trial." *Smith ex rel. Smith v. Severn*, 129 F.3d

419, 427 (7th Cir. 1997); *see also Celotex Corp.*, 477 U.S. at 322-23. "The existence of a mere

scintilla of evidence, however, is insufficient to fulfill this requirement. The nonmoving party

must show that there is evidence upon which a jury reasonably could find for [him]." *Wheeler*,

539 F.3d at 634 (internal citation omitted).

On summary judgment the Court limits its analysis of the facts to the evidence that is

supported by the parties' Local Rule 56.1 statements properly before the Court. *See F.T.C. v. Bay*

*Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005); *Bordelon v. Chi. Sch. Reform Bd. of*

*Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). When a proposed statement of fact is supported by the

record and not adequately controverted by the opposing party, the Court will accept that statement

as true. *See Alberio*, 246 F.3d at 933. To adequately dispute a statement of fact, the opposing

party must cite specific support in the record; an unsubstantiated denial or a denial that is mere

argument or conjecture is not sufficient to create a genuinely disputed issue of material fact. *See*

*id; see also Judson Atkinson Candies, Inc.*, 529 F.3d at 382 n.2; *Cady*, 467 F.3d at 1060. Factual

disputes "are genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmovant." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 676 (7th Cir. 2001) (internal citations and quotation marks omitted). The existence of a materially disputed issue of fact will be sufficient to avoid summary judgment only if the disputed fact is determinative of the outcome under the applicable law. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

## ANALYSIS

The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, provides that this Court may declare the rights and other legal relations of any interested party to an actual controversy within its jurisdiction. The key language of the statute provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The remedies available under the Act are not limited to federal law claims, but apply in diversity cases as well. *Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010) (applying the Declaratory Judgment Act to a diversity suit and noting that "a federal court applying the Declaratory Judgment Act must evaluate the parties' rights based on the same body of substantive law that would apply in a conventional action"). The goal of the Declaratory Judgment Act "is to allow for the efficient resolution of disputes by early adjudication of the rights of the parties." *Id.* (citing *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937) ("It was the congressional intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit,

after damage had accrued.")).

In the instant case, Plaintiff is a resident of the State of Connecticut and Defendant is a resident of the State of Illinois. No one disputes that diversity jurisdiction exists. Therefore, the Court has diversity jurisdiction to hear this action pursuant to 28 U.S.C. § 1332. A federal court sitting in diversity applies the choice-of-law rules of the forum state to determine which state's substantive law applies. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The parties do not dispute that Illinois law governs the instant action. Because no argument has been made that any other state's law applies, and because Illinois's choice-of-law rules point toward the application of Illinois law, the Court concludes that Illinois law must be applied to this insurance coverage dispute.

Illinois follows the initial permission rule in cases of automobile insurance coverage disputes. *Maryland Cas. Co. v. Iowa Nat. Mut. Ins. Co.*, 297 N.E.2d 163, 167-68 (Ill. 1973); *St. Paul Fire and Marine Ins. Co. v. Guithrie*, 773 N.E.2d 763, 765 (Ill. App. Ct. 3d Dist. 2002). Illinois has long followed the rule that if the named insured has initially given permission to another person to use the insured automobile, a deviation from the authorized use does not serve to terminate the permission. *See Maryland Cas. Co.*, 297 N.E.2d at 167; *St. Paul Fire and Marine Ins. Co.*, 773 N.E.2d at 765; *Konrad v. Hartford Accident & Indem. Co.*, 137 N.E.2d 855, 861 (Ill. App. Ct. 2d Dist. 1956). When the named insured has initially given permission to another to use his automobile, any use while it remains in the user's possession is with "permission" under the "omnibus clause," even though that use may be for a purpose not contemplated by the named insured when he gave up possession of the automobile. *See Maryland Cas. Co.*, 297 N.E.2d at

167; *St. Paul Fire and Marine Ins. Co.*, 773 N.E.2d at 765; *Konrad.*, 137 N.E.2d at 861. An "omnibus clause" is a provision in an automobile insurance policy that extends coverage to persons "who use the named insured's vehicle with his or her permission." *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Grp.*, 695 N.E.2d 848, 850 (Ill. 1998). "The purpose of the omnibus provisions is to protect the public by ensuring that adequate resources are available to compensate for injuries sustained as a result of automobile accidents." *State Farm Mut. Auto. Ins. Co. v. Hertz Claim Mgmt. Corp.*, 789 N.E.2d 407, 411 (Ill. App. Ct. 5th Dist. 2003). The Policy at issue in this case contains an omnibus clause. (R. 59, Def.'s Rule 56.1 Resp. ¶ 43.) If the original taking of the automobile by the user is with the named insured's permission, assuming that there is no termination of permission, a deviation from the permission is immaterial; the only essential thing is that permission was given in the first instance. *See Maryland Cas. Co.*, 297 N.E.2d at 167-68; *St. Paul Fire and Marine Ins. Co.*, 773 N.E.2d at 765; *Konrad.*, 137 N.E.2d at 861. In other words, "once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like." *Maryland Cas. Co.*, 297 N.E.2d at 167 (internal citations and quotation marks omitted). The rule is based on "the theory that the insurance contract is as much for the benefit for the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use." *Maryland Cas. Co.*, 297 N.E.2d at 168; *see also St. Paul Fire and Marine Ins. Co.*, 773 N.E.2d at 765; *Konrad.*, 137 N.E.2d at 861. "The rule applies notwithstanding the first permittee's deviation from the authority given to him by the insured, and also even where it cannot be established that the initial permittee granted permission to the third person driving the vehicle." *St. Paul Fire and Marine Ins. Co.*, 773 N.E.2d at 765 (internal citation and quotation marks omitted).

43

Under Illinois law, there is no coverage under an insurance policy if the driver of the car was never given permission to operate the car in the first instance. *See Universal Underwriters Grp.*, 695 N.E.2d at 850 ("Accordingly, a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission."); *Founders Ins. Co. v. Contreras*, 842 N.E.2d 177, 178 (Ill. App. Ct. 1st Dist. 2005) ("The 'initial permission' rule provides that once the owner or named insured of an automobile liability insurance policy containing an omnibus clause gives another individual permission to use the vehicle (the initial permittee), any person subsequently given permission to drive the vehicle by the initial permittee is also covered under the policy, barring theft or tortious conversion."). In *Woodall v. Borras*, 538 N.E.2d 1263, 1263-64 (Ill. App. Ct. 2d Dist. 1989), the named insured gave his son permission to use his car but the son's friend took the car and caused an accident. The court held that the friend was not a permissive user and, therefore, was not covered under the father's insurance policy. *See id.* at 1267. The court reasoned that the friend was not a permissive user because the son specifically told the friend that he was not allowed to drive the car, and the friend's taking of the car resulted in tortuious conversion, an exception to the initial permission rule. *See id.*

Coverage under an insurance policy does not extend to a person who gains access to a car via theft or tortious conversion, both of which are exceptions to the initial permission rule. *See Am. Country Ins. Co. v. Wilcoxon*, 537 N.E.2d 284, 287 (Ill. 1989) ("[T]he initial permission rule does not extend coverage to a driver who has obtained possession by theft or tortious conversion."); *Contreras*, 842 N.E.2d at 178 (holding that no coverage existed under an automobile policy because no one gave the driver permission to use the car, and noting that the

44

"initial permission rule" entitles subsequent drivers to be an insured "barring theft or tortious conversion"); *Harry W. Kuhn, Inc. v. State Farm Mut. Auto. Ins. Co.*, 559 N.E.2d 45, 48-50 (Ill. App. Ct. 1st Dist. 1990) (holding that because the driver's possession of the car constituted a tortious conversion, the driver was not a permissive user and consequently was not an "insured" under the automobile policy).

Hartford argues that this case is "on all fours with *Woodall*." (R. 45, Pl.'s Mem. at 7.) Hartford argues that American Fidelity gave Mattsson permission to use the car. (*Id.*) It argues that Mattsson expressly told Taylor that he did not have permission to use the car and that Mattsson's and Toomer's testimony, corroborated by the surveillance and red-light video, establish that Taylor drove the car on November 21, 2010, when he did not have permission to do so. (*Id.*) Hartford argues that Taylor's action of taking the car without permission and after being told that he was not permitted to drive the car resulted in a tortious conversion of the car. (*Id.*) Consequently, Hartford argues, Taylor is not a permissive user and is not an insured under the Policy. (*Id.* at 7-8.)

Viewing the evidence and drawing all reasonable inferences in Gagliano's favor, as the nonmoving party, the Court finds that material facts of this case are in dispute and do not entitle Hartford to judgment as a matter of law. *See Omnicare Inc.*, 629 F.3d at 704. Gagliano contends that Mattsson and Taylor never discussed whether Taylor had permission to use the car. (R. 59, Def.'s Rule 56.1 Resp., Ex. C, Taylor Dep. at 25:4-12.) Gagliano contends that Mattsson put the keys to the car out in the open in the hotel room, in plain sight of Taylor and Toomer. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 13.) Furthermore, it is disputed whether Taylor was driving the car on November 21, 2010, when the hit-and-run accident occurred, as Taylor testified at his deposition

on April 16, 2010 that he was not driving Mattsson's company car at the time of the accident. (R. 59, Def.'s Rule 56.1 Resp., Ex. C, Taylor Dep. at 52:3-7, 52:10-21, 53:24-54:3.) These disputed facts are material as they may affect the outcome of the suit under governing law. *See Hampton*, 561 F.3d at 713. Gagliano, as the nonmoving party, has met his burden of setting "forth specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324, by more than a "mere scintilla of evidence," *Wheeler*, 539 F.3d at 634 . Thus, genuine disputes exist as to who was driving the company car at the time of the accident and whether Taylor had permission to drive the company car. These disputed facts are sufficient to forestall summary judgment because these facts are determinative of the outcome under the applicable law and therefore summary judgment is improper. *See Montgomery*, 626 F.3d at 389.

Hartford has not disputed that if Mattsson was driving the company car at the time of the accident, coverage would apply. (R. 60, Def.'s Resp. at 2.) Hartford's sole attempt to circumvent coverage rests with Mattsson's story that Taylor, and not Mattsson, was driving the company car when it struck Gagliano. Hartford attempts to support its story with Mattsson's self-serving affidavit and purported video footage from the Hotel and the scene of the accident. However, neither the video footage nor the affidavit support Hatrford's position. (*Id*. at 3.) First, Mattsson does not claim to have ever seen Taylor operate the company car. In fact, Mattsson claims to have been asleep at all relevant times, and does not purport to have any actual personal knowledge that Taylor was the driver at the time of the accident. (R. 59, Def.'s Rule 56.1 Resp. ¶ 21.) Instead, Mattsson claims that he can identify Taylor in the surveillance video as he gets into the company car before the accident. (R. 44, Pl.'s Facts, Ex. A, Mattsson Aff. ¶¶ 21, 22.)

This assertion is dubious at best. (R. 60, Def.'s Resp. at 3.) The video footage at the

Hotel is dark and grainy. While it is possible to identify figures coming and going from the second floor of the Hotel, it is not possible to distinguish the individuals' clothing, race, height, hair color, or any other distinguishing characteristics. Furthermore, Mattsson admits that there is nothing distinctive about Taylor's posture or gait other than that he stands "pretty straight" and walks "quickly." (R. 64, Pl.'s Rule 56.1 Resp. ¶ 7.) Likewise, the video from the red-light camera at Ridge Avenue and Clark Street cannot be used to identify the driver at the time of the accident. (R. 59, Def.'s Rule 56.1 Resp. Ex. E, Red-Light Video at 3:27:43.) Mattson's affidavit regarding Taylor's use of the company car at the time of the accident is sheer speculation and therefore is accorded very little weight. *See, e.g., Thomas*, 499 F. Supp. 2d at 1072.

The Court need not accept Mattsson's current version of events as true. "[S]elf-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004)). Furthermore, "[t]he trial judge has broad discretion to disregard an affidavit on summary judgment." *Nedzvekas v. LTV Copperweld*, 356 F. Supp. 2d 904, 908 (N.D. Ill. 2005) (citing *Corder v. Lucent Techs. Inc.*, 162 F.3d 924, 927 (7th Cir. 1998)). In the present suit, the most critical elements of Mattsson's affidavit are self-serving and without factual support. Mattsson provides no support for his claim that Taylor, and not himself, was driving the company car at the time of the accident. (R. 60, Def's Resp. at 5.) Mattsson claims that he was asleep and did not even hear Taylor leave the Hotel before the accident, and the video evidence cited in his affidavit is indecipherable. (*Id.*)

Although Mattsson's credibility is at issue in this case, summary judgment is an improper vehicle to make credibility determinations. "Credibility determinations, the weighing of the

47

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment[.]" *Payne*, 146 F.3d at 432 (quoting *Anderson*, 477 U.S. at 254) (internal quotation marks omitted). Further, "a determination of credibility cannot be made on the basis of an affidavit." *Castillo v. U.S.*, 34 F.3d 443, 445 (7th Cir. 1994). The court in *Castillo* explained this rule, stating that "a judge cannot take two affidavits which swear to opposite things and say, 'I find one of the affidavits more credible than the other, and therefore I shall accept it as true.' The purpose of inviting affidavits, as in a summary judgment proceeding, is to determine whether there is a dispute over a material issue of fact, rather than to enable the judge to resolve the dispute by picking one affidavit over another that contradicts it[.]" *Id.* (internal citations omitted). Here, Mattsson's affidavit is in direct contradiction with the sworn deposition testimony of Taylor regarding the key facts of this case, including whether he had permission to drive the company car and who was driving the company car at the time of the accident. (R. 59, Def.'s Rule 56.1 Resp., Ex. C, Taylor Dep. at 25:4-12, 52:3-7, 52:10-21, 53:24-54:3.) For the purposes of Hartford's motion, the Court must not make a determination as to which of the two statements is more credible.

Furthermore, Gagliano argues that coverage must apply to Taylor's use of the company car because he did not have any intent to deprive Mattsson of his right to possession of the car. (R. 60, Def.'s Resp. at 12-13.) In *Verucchi*, 363 N.E.2d at 827, the defendant's policy covered the use of William Elmendorf's 1969 Plymouth automobile. Robert Elmendorf, William's 16-year-old son, was using the car on the night of the accident with his father's express permission. *See id.* at 827. Robert and his friend, John Verucchi, were at a restaurant when John, without Robert's permission, found the keys to the vehicle and decided to drive the car around the block. *See id.*

48

John was then involved in an accident. *See id.* Robert testified that "he had never permitted anyone else to drive the car." *Id.* The Supreme Court of Illinois found that "[c]learly, John Verucchi's conduct does not constitute theft, since it is undisputed that he lacked the requisite intent to permanently deprive the Elmendorfs of their car. Nor do we believe it constituted a tortious conversion." *Id.* at 828. The court went on to explain with respect to conversion that "[w]hile that action may have constituted a technical conversion, it is clearly not the type of conduct embraced within the *Maryland Casualty* and *McManus* exceptions." *Id.*

Gagliano argues that even under Mattsson's version of the events, Taylor's use of the company car did not constitute "theft and the like" so as to bar coverage. (R. 60, Def.'s Resp. at 13.) It is undisputed that Taylor lacked the intent to permanently deprive Mattsson of the use of his company car. Taylor stated that when he took Toomer to the train station, he had no intention of stealing the car and only intended to use the vehicle to take Toomer to the train station and come right back. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 17.) Even if Hartford can prove that Taylor took the car out a second time, there is no dispute that he returned it. Further, Mattsson claims that he was asleep the entire time, (R. 40, Pl.'s Facts, Ex. A, Mattsson Aff. ¶ 16), and that he did not see or hear Taylor leave the hotel room before the accident and did not hear Taylor reenter the room after the accident, (*id.* ¶¶ 21, 24). If Mattsson's claim that he was asleep is to be believed, he could not have had any intention of using the company car during this time and thus, according to Gagliano, was not deprived of any rights by Taylor's alleged use of the vehicle. (R. 60, Def.'s Resp. at 13.) Gagliano argues that following *Verucchi*, Taylor's alleged use of the company car at the time of the accident was not a theft or tortious conversion. (*Id.*) For this reason, Gagliano argues, under any set of facts Hartford can demonstrate, coverage must apply under the initial

49

permission rule. (*Id.*)

Gagliano also argues that Taylor had Mattsson's implied permission to operate the car. (*Id.* at 13-14.) The term "permission" as used in an omnibus clause like the one in question is deemed to include implied as well as express permission. *See Konrad*, 137 N.E.2d at 861 ("The first basic question, here, is: Was [the borrower] a person using or responsible for the use of this motor vehicle with the express *or implied permission* of the named insured . . . a corporation, under the omnibus clause, and was he himself hence an insured or additional insured under this policy? We think he was.") (emphasis supplied). In Illinois, "[i]mplied permission involves an inference or circumstances arising from a course of conduct or relationship between the parties in which there is a mutual acquiescence or lack of objection under circumstances signifying permission." *Lumbermans Mut. Cas. Co. v. Poths*, 243 N.E.2d 40, 45-46 (Ill. App. Ct. 2d Dist. 1968). Implied permission is not confined to affirmative action. *See id.* Furthermore, there is an inference of permission "where the third person is engaged in some errand or activity for the benefit, advantage, or purposes of the original permittee." *Id.* at 46. Gagliano argues that Taylor's use of the company car to drive Mattsson's friend to the train station was for Mattsson's benefit, not Taylor's, and thus Taylor had implied permission to operate the vehicle. (R. 60, Def.'s Resp. at 13.)

Gagliano argues that the only time it is undisputed that Taylor drove the company car, when Taylor drove Toomer to the train station, Taylor had Mattsson's implied permission to operate the vehicle. (*Id.* at 14.) Mattson had repeatedly told Toomer that he would drive him to the train station that night. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 12.) When Mattsson fell asleep, Taylor knew that Mattsson's friend—who is visually impaired—still needed a ride to the train station.

Taylor believed that he could use Mattsson's company car to fulfill Mattsson's promise to get

Toomer to the train station, and he grabbed the keys that were left out in the open on the dresser.

(*Id.* ¶¶ 16, 17.) Gagliano argues that the inference to be drawn from these circumstances is that

Taylor had Mattsson's implied permission to use the company car to drive Toomer to the train

station. (R. 60, Def.'s Resp. at 14.) This is certainly what Taylor thought; he testified that he felt

that based on his relationship of trust with Mattsson, he could use Mattsson's car to drive Toomer

to the train station. (R. 64, Pl.'s Rule 56.1 Resp. ¶ 17.)

Hartford argues that Taylor did not have express or implied permission to use the car. (R.

63, Pl.'s Reply at 10-15.) Hartford claims that Taylor denied hearing any conversation between

Toomer and Mattsson regarding a ride to the train station. (*Id.* at 13; R. 59, Def.'s Rule 56.1

Resp., Ex. C, Taylor Dep. at 48:7-10.) Hartford argues that under Illinois law, the placement of

keys on a dresser does not provide support for implied permission. (R. 63, Pl.'s Reply at 13.)

Hartford cites *Bishop v. Morich*, 621 N.E.2d 43, 46 (Ill. App. Ct. 1st Dist. 1995), which holds that

in a negligent entrustment case, leaving keys in an area where a teenager could take them does not

imply permission to use a car. Hartford further argues that Taylor's intent is irrelevant under

Illinois law because tortious conversion does not require a showing of culpability. (R. 63, Pl.'s

Reply at 14) (citing *Landfield Finance Co.*, 279 N.E.2d at 33). This argument ignores *Verucchi*,

363 N.E.2d at 282, in which the Supreme Court of Illinois found that insurance coverage attached

where there was no intent to deprive the owner of the use of his automobile. Hartford argues that

conversion is the unauthorized assumption of the right to possession or ownership of the

plaintiff's property and the plaintiff has a right to immediate possession which is absolute and

unconditional. *See Jensen v. Chicago & W. Ind. R.R. Co.*, 419 N.E.2d 578, 592-93 (Ill. App. Ct.

51

1st Dist. 1981) ("To constitute conversion of a chattel, there must be an unauthorized assumption of the right to possession or ownership. The essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof. One claiming conversion must show a tortious conversion of the chattel, a right to property in it, and a right to immediate possession which is absolute and unconditional and not dependent upon the performance of some act.") (internal citations omitted). Hartford argues that Mattsson was asleep at the time Taylor allegedly took the company car and had no knowledge that Taylor was actually taking the car. (R. 63, Pl.'s Reply at 14.) Therefore, Hartford argues, it would have been impossible for Mattsson to prevent Taylor from taking the car. (*Id.*) Hartford argues that the tort of conversion does not require that Mattsson demand the return of his car or physically prevent Taylor from driving. (*Id.*) Hartford cites *Landfield Finance Co.*, 279 N.E.2d at 33 in which the court stated that "one who knowingly takes possession of personal property which belongs to another is liable to the person whose property has been appropriated whether or not a demand is made for the return of such property." (*Id.*) Hartford argues that in this case, Taylor converted the damaged car when he returned it to the parking lot. (*Id.* at 15.) It is undisputed that the windshield was shattered and that there was damage to the front passenger side. (R. 59, Def.'s Rule 56.1 Resp., Ex. A, Mattsson Dep. at 65:13-67:12.) Hartford attempts to dispute Gagliano's argument that Mattsson's rights were not deprived because he was asleep at the time Taylor allegedly took the car. (R. 63, Pl.'s Reply at 15 n.10.) Hartford contends that conversion is a defendant's interference with the plaintiff's *right* of possession. (R. 63, Pl.'s Reply at 15 n.10) (citing *Landfield Finance Co.*, 279 N.E.2d at 33). Hartford argues that it is undisputed that the car was damaged, and that consequently Mattsson's ability to use the car in the morning and thereafter was affected. (R. 63, Pl.'s Reply at 15 n.10.)

In fact, Mattsson has never been able to use the company car again as it remains in police custody. (R. 59, Def.'s Rule 56.1 Resp., Ex. A, Mattsson Dep. at 95:18-19.)

This case cannot be resolved on summary judgment, as Gagliano has "set forth specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324. There are genuinely disputed issues of material fact that must be resolved by a jury. It is disputed whether Taylor had implied permission to drive the company car. It is also disputed that Taylor was driving the car at the time of the accident. Furthermore, Mattsson's and Taylor's credibility are at issue, and it is not the proper role of this Court to make credibility determinations in ruling on a motion for summary judgment. *See Payne*, 146 F.3d at 432. Without ascertaining the answers to the disputed questions of material fact, and without resolving the credibility issues, this case cannot be decided. Here, the existence of materially disputed issues of fact are sufficient to avoid summary judgment because the disputed facts are determinative of the outcome under the applicable law. *See Montgomery*, 626 F.3d at 389. Therefore, the case must be submitted to a jury in order to resolve the disputes and make proper credibility determinations. Thus, judgment as a matter of law cannot be entered in Hartford's favor, and its motion must be denied.

## CONCLUSION

For the reasons set forth above, Hartford's motion to strike portions of Gagliano's Response to Hartford's Statement of Facts and Gagliano's Statement of Additional Facts (R. 66) is GRANTED in part and DENIED in part. Hartford's motion for summary judgment against Gagliano (R. 43) is DENIED. The parties are requested to reevaluate their settlement positions in light of this opinion and to exhaust all settlement opportunities. A status hearing will be held in open court on November 8, 2012, at 9:45 a.m. to set a firm trial date for this lawsuit.

ENTERED: _____

Judge Ruben Castillo
United States District Court

Dated: October 17, 2012